# FLORA A. JOHNSON v. C. O. GUSTAFSON AND OTHERS.[1]

January 14, 1938.

No. 31,489.

[1]Reported in 277 N. W. 252.

*Robert Cowling,* for appellants.
*W. L. Sholes,* for respondent.

JULIUS J. OLSON, JUSTICE.

C. O. Gustafson and M. W. Clarity appeal from a judgment. As to the other three defendants, two of them being the wives of appellants and the third the former owner of the property out of which the litigation arose, the cause was dismissed. We shall hereafter refer to appellants as defendants.

The judgment has for its basis findings made by the court, in substance as follows: Plaintiff is a real estate broker in Minneapolis. Defendant Anna Coppersmith owned a residential property there which she desired to sell. To bring this about she listed it with plaintiff for sale at $6,500 (later reduced to $6,000). Plaintiff's commission, if she found a buyer willing and able to buy, was to be five per cent of the list price, $300. She succeeded in getting defendant Clarity interested in the property and accompanied him and his wife on a visit to it and inspection thereof. Clarity, although much interested, evidently did not like the idea of paying any commission. To avoid such he conceived the following scheme: Defendant Gustafson was his trusted friend. To him was delegated the business of making a deal directly with the owner, but for his (Clarity's) benefit. As the listing contract was not an exclusive one, the owner could make her own deal without liability for commissions, provided the sale be made to one not brought to her by plaintiff. Gustafson, pursuant to his engagements with Clarity and in his behalf, went to see the owner, representing that he had sold his own home and wanted to buy another for himself and family. He was asked if any real estate agency had sent him, and he emphatically answered in the negative, stating that he had learned through a friend that this particular place was for sale. He informed the owner that in selling his property he had avoided real estate agencies and as such could and did sell at a lesser price, thereby giving the purchaser the benefit of what otherwise would

go to such agency. His statements were wholly false. He had not sold his home.

The negotiations mentioned were had after Clarity and his wife, including the plaintiff, had visited and inspected the Coppersmith property. A day or two after Gustafson's visit with the owner, Clarity went back to plaintiff, and, as the court found, to allay any suspicion on her part as well as that of the owner, made an earnest money offer to buy the property for $5,700, depositing therewith $50. In his conversation with plaintiff, upon being informed that $6,000 was the owner's lowest price, Clarity said, "I bet you $25 she [the owner] will take $5,700 for the property." Plaintiff immediately submitted the earnest money offer, which was promptly rejected, the owner informing plaintiff that another man had looked at her property several times and that the price offered was $5,700 "without the commission." A day or two later the owner and Gustafson entered into a contract of sale, later resulting in a consummated deal. Clarity furnished every dollar of the purchase money. The deal was closed, and all papers were drawn in the office of his chosen attorney. Clarity paid all legal fees and other expenses. Gustafson was a mere "conduit" through whom defendant Clarity received title. His activity in entering into this deal and in its consummation was "solely for the purpose of carrying out the collusive scheme to defraud" plaintiff. If it were not "for the collusive and fraudulent acts and misrepresentations" on the part of defendants, "plaintiff would have earned" her agreed commission.

Upon these findings the court was of opinion that plaintiff should recover the amount of the commission. For that amount a judgment was later entered, and, as has been said, the appeal is therefrom.

It is well to mention here that there was no motion for new trial nor were any exceptions taken to any of the court's rulings.

■ The rule is well established in this state that no error in a ruling on the trial may be reviewed on appeal from a judgment if appellant did not take an exception on the trial or include such in a motion for new trial. This applies whether the trial be had

632

to the jury or the court. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 388, and cases cited under notes. Nor will a judgment be reversed here unless the record affirmatively shows material error. *Id.*, § 386, and Supps. 1932, 1934.

■ We have, then, to consider: (1) Whether the evidence reasonably supports the findings of the court; and (2) if they are so sustained, whether they justify imposing liability upon defendants.

(1) A review of the record leaves no doubt that the court was not only justified in finding as it did but that any other finding would be against the evidence. Defendants did not see fit to interpose any proof in their own behalf, preferring to risk their defense to an attack upon the sufficiency of plaintiff's cause.

(2) We may grant that Clarity had a perfect right to buy this property for $5,700 and could, if he so desired, engage Gustafson to bring this about. But in doing so he should not be permitted to defeat plaintiff's cause by resort to falsehood and the practice of fraud. By his own deliberate scheme, brought to fruition through the intervention of Gustafson, Clarity procured this property. By the joint efforts of defendants, plaintiff was deprived of her opportunity to make the sale to Clarity. There is no getting away from these facts.

"The right to perform a contract and to reap the profits resulting from such performance, and the right to performance by the other party, have been explicitly declared to be property rights, entitling each party to protection in its performance." See 84 A. L. R. pp. 46 and 47. The cases uniformly so hold, ours amongst them. Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326; Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396.

Clarity had knowledge of plaintiff's contract engagements with Mrs. Coppersmith. To make the desired deal, he sought to, and in fact did, bring about a breach of the contract between Mrs. Coppersmith and plaintiff. That plaintiff suffered damages thereby seems clear. Hence we think plaintiff met the required burden of proof in cases such as this, *i. e.*, that there was a breach of contract and

that defendants were the moving cause thereof. The applicable rule may be stated thus (84 A. L. R. p. 52):

" 'Interference with Contract Relations,' includes not merely the procurement of a breach of contract, but all invasion of contract relations, so that any act injuring or destroying persons or property which retards, makes more difficult, or prevents performance, or makes performance of a contract of less value to the promisee, may fall within its scope, it may be said that, the interest in a contract being a property right, a party thereto has a right of action against persons who are by their conduct substantially interfering with the performance thereof."

Numerous cases are cited in support of the annotator's quoted statement, amongst them Mealey v. Bemidji Lbr. Co. 118 Minn. 427, 136 N. W. 1090; Twitchell v. Nelson, 126 Minn. 423, 148 N. W. 451, 601; Twitchell v. Glenwood-Inglewood Co. 131 Minn. 375, 155 N. W. 621; Canellos v. Zotalis, 145 Minn. 292, 177 N. W. 133; Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326.

Plaintiff having a contract and as such a property right in it, we think a cause of action against Clarity and his coconspirator arose the moment they succeeded in bringing about its breach. Their conduct was not a legitimate exercise of their rights to get the property. They purposely conceived this scheme and to make it work fraudulently presented Gustafson as a *bona fide* purchaser in his own behalf. The owner acted in good faith and thought she was dealing with him and him alone. While plaintiff's efforts had not proceeded far enough to bear fruit, the law does not "restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. Full, fair, and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor. The weapons used by the trader who relies upon this right for justification must be those furnished by the laws of trade, or at least must not be inconsistent with their free operation. No man

can justify an interference with another's business through fraud or misrepresentation, nor by intimidation, obstruction or molestation.'" (Citing cases.) Skene v. Carayanis, 103 Conn. 708, 714, 131. A. 497, 498. "It is not justification for knowingly procuring the breach of a contract that defendant acted without an improper purpose, and sought only to further his own interests." 84 A. L. R. p. 83, and cases there cited.

This subject was thoroughly considered in Sorenson v. Chevrolet Motor Co. 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35. (See annotations, pp. 43, *et seq.,* where the author exhaustively cites and comments upon numerous cases.) It should be added that in Skene v. Carayanis, 103 Conn. 708, 131 A. 497, and Louis Kamm, Inc. v. Flink, 113 N. J. L. 582, 175 A. 62, 66, the facts were much like those here presented. Plaintiff's right to recovery was sustained in each of them. In the Kamm case the court pertinently said (113 N. J. L. 587) :

" 'Merely to persuade a person to break his contract, may not be wrongful in law or fact * * * But if the persuasion be used for the *indirect purpose of injuring the plaintiff, or of benefiting the defendant, at the expense of the plaintiff, is a malicious act,* which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act if injury ensues from it.' " And further (113 N. J. L. 589) : "This right to pursue one's business without such undue interference, and the correlative duty, are fundamentals of a well-ordered society. They inhere basically in the relations of those bound by the social compact. They have their roots in natural justice."

■ As we have seen, on the issue of damages the court found that plaintiff would have earned her agreed commission had it not been for the fraudulent acts of defendants. That plaintiff was deprived by them of her opportunity to pursue to the end her negotiations for the sale of this property is clear. The wrongful cause being established, there then remains only the measure of damages to be applied. The action sounds in tort. It is not founded upon breach of contract. As a matter of right and justice, in any sort

of action the wronged party is entitled to such sum as will reasonably compensate for the damages caused if these are the natural and proximate result of the wrong. And the "rule is the same whether the action is *ex contractu* or *ex delicto*." 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 2528, and cases cited.

It seems to us that Clarity's assertion that he would not have paid more than he did ($5,700) in any event comes with poor grace. He was willing to and did concoct a fraudulent scheme. He procured the necessary assistance to bring about a result which, had it not been discovered, would have given him an advantage to the extent of the commission plaintiff was in common honesty entitled to receive. No man should be permitted to reap a profitable crop from seed of the kind here used.

The judgment is affirmed.

