159 So.2d 893 (1964)
H.B. FRANKLIN d/b/a H.B. Franklin, Realtor, Appellant,
v.
Freddie L. BROWN, Appellee.
No. E-268.
District Court of Appeal of Florida. First District.
January 7, 1964.
Rehearing Denied February 10, 1964.
*894 Truett & Watkins, Tallahassee, for appellant.
Dye, Tucker & Joanos, Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant sues appellee in an action at law for damages suffered as a result of the alleged tortious acts of appellee. From a final judgment dismissing the amended complaint for failure to state a cause of action, this appeal is taken.
The sole question presented for our decision is whether the amended complaint on which appellant relies for recovery states a cause of action. In determining the sufficiency of the complaint, all well pleaded allegations must be taken as true.[1]
The complaint contains allegations of the following ultimate facts. Appellant is a duly licensed and practicing real estate broker in Leon County. He entered into a non-exclusive listing contract with Welton Smith, Inc., a Florida corporation, whereby appellant agreed to use his best efforts and the facilities of his office in procuring a purchaser ready, willing, and able to buy a residence property owned by Welton Smith for the stipulated purchase price of $27,400.00. It was agreed that the purchase price included a five per cent commission to be paid appellant upon the successful completion of his brokerage undertaking.
While engaged in the performance of his contract with Welton Smith, appellant was approached by one Marie Dawson who advised that appellee, then a resident of Pensacola, contemplated moving his residence to Leon County and was interested in purchasing a home there. At that time Dawson was the secretary, and appellee was the president, of a corporation operating under the corporate name of Motors Management Company, Inc. Arrangements were made by Dawson for appellant to meet appellee on his arrival in Tallahassee and show to him certain residence properties which he might be interested in purchasing as a home. Numerous residences listed with appellant were subsequently shown to appellee, including the property owned by Welton Smith concerning which the listed sale price of $27,400.00 was quoted to appellee. On the following day, appellee again contacted appellant and they made a second inspection of the Welton Smith residence. On this visit the owner was present and furnished appellee additional information concerning the property. During these inspections of the Welton Smith property, appellee inquired as to possible methods of financing a part of the purchase price, and appellant advised him the names of two mortgage brokers who, at appellant's request, inspected the Welton Smith property in order to be in position to present a financing proposal to appellee. Appellee departed from appellant's *895 office with the expressed intention of considering the purchase of the Welton Smith residence, and agreed to communicate his decision to appellant in the immediate future.
Instead of fulfilling his agreement to communicate with appellant upon reaching a decision concerning the purchase of the Welton Smith residence, appellee enlisted the services of Dawson, secretary of the corporation of which appellee was then president, who at appellee's request directly contacted the president of Welton Smith, Inc., and offered to purchase the residence for the sum of $26,000.00, the net amount which the owner would receive after payment of a brokerage fee had the transaction been handled by appellant; in so doing, Dawson intentionally concealed from Welton Smith the fact that she was acting as the agent of appellee. Welton Smith did not know, and had no reason to suspect, that Dawson was connected in any manner with appellee, or was acting as appellee's agent in the transaction. It is alleged that appellee and his agent, Dawson, withheld from and failed to disclose to Welton Smith the fact that Dawson was acting as agent for appellee in the transaction in order to deprive appellant of the opportunity of earning the real estate brokerage commission to which he would have been entitled under his listing contract with Welton Smith; that both appellee and his agent, Dawson, knew that if the owner, Welton Smith, had been informed or otherwise learned that Dawson was acting as the agent for appellee in her negotiations for the purchase of the property, that he would not have sold it for the price of $26,000.00, but would have required payment of the full listed price of $27,400.00 so that appellant could have been paid from the proceeds of the purchase price the real estate brokerage commission which he had earned.
As a result of the artifice practiced by appellee and his agent, Dawson, Welton Smith conveyed the property in question to the corporation, Motors Management Company, and received in consideration therefor the offered cash price of $26,000.00. On the same day this transaction was closed, Motors Management Company conveyed the property to appellee for an alleged consideration of $30,000.00.
The complaint further alleges that appellant had performed all the services required of him to entitle him to his brokerage commission, which commission had been earned and would have been paid except for the unlawful conspiracy between appellee and his agent, Dawson, and that had not the conspiracy instigated and carried to a conclusion by appellee been effective, appellee would have purchased the Welton Smith property through appellant as broker for the listed price of $27,400.00, out of which appellant would have been paid his agreed commission in accordance with his contract with the owner.
By the allegations of his complaint, appellant seeks recovery in the amount of his lost commission under three separate theories. By count one of the complaint, appellant seeks judgment for the damages suffered as a result of appellee's unlawful interference with appellant's business relationship under his brokerage contract with Welton Smith. Count two of the complaint seeks damages on the theory of unjust enrichment, and count three on the theory of fraud and deceit.
The intentional and unjustified interference with the advantageous business relationship existing between others which results in injury constitutes a tort under the law of this State. As said by the Supreme Court in the Dade Enterprises case:[2]
"The weight of modern authority holds that interference with any contract amounts to a tort. * * * In such cases the injured party has an action against the party in default upon the *896 contract, but he is not limited thereto. He may also maintain an action against the wrongdoer who induced such breach."
The decision in Dade Enterprises refers to the origin of the rule in Florida as first announced by the Supreme Court in Chipley v. Atkinson.[3] The Chipley case makes it clear that for one to have a cause of action in tort against a wrongdoer who has willfully or maliciously interfered with the injured party's favorable business relationship with another, it is not necessary that the business relationship be founded upon an enforceable contract, or that the interference result in a breach of a contract which would give rise to a cause of action by the injured party against the one defaulting under the contract.
Appellant in the case sub judice does not allege that Welton Smith breached its brokerage contract with him. According to the allegations of the complaint, Welton Smith had no knowledge that Dawson was acting as agent for appellee. The complaint alleges that under these circumstances, Welton Smith committed no breach of its non-exclusive brokerage contract with appellant when it sold the property direct to Motors Management Company without adding to the sale price an amount sufficient to pay appellant's commission. Even though appellant asserts no cause of action against Welton Smith for breach of contract, this in itself does not bar appellant from asserting a cause of action against appellee if the latter's conduct constitutes a tortious interference with appellant's business relationship with Welton Smith. If by his wanton conduct appellee intentionally destroyed the subject matter of the contract existing between appellant and Welton Smith, or otherwise unlawfully rendered the latter's performance under the contract impossible, appellee would be liable in tort to the same extent as if he had unlawfully induced Welton Smith to breach its contract with appellant.[4]
The case of Williams v. Dr. P. Phillips & Sons[5] involves a suit factually similar in many respects to the case at bar. In affirming a judgment sustaining a demurrer to the declaration filed by a broker to recover damages for unlawful interference by a purchaser with the real estate brokerage contract entered into between the broker and the owner, the Supreme Court said:
"While the right of a party to a contract to sue a third person in tort for wrongful interference with his contract rights has been upheld in several jurisdictions, we do not find that the right has ever been recognized where the contract is not exclusive or has not been fulfilled by the contracting party by at least partial performance; or where the contracting party has failed to show that he had a reasonable expectation of being able to perform the contract, in accordance with its terms and conditions, had not the acts of the third person intervened.
* * * * * *
"While it is alleged in the declaration that the defendant Dr. P. Phillips & Sons, Inc. was financially able to pay $213,000 for the grove property, it is not alleged that the corporation was ready and willing to close for such price, or for any price in excess of the $200,000 which it eventually paid in its dealings directly with the owner. Neither is it shown by the pleading that but for the action of the defendant in dealing directly with the owner, the broker could have persuaded the defendant to purchase the property for $213,000; or that he had the reasonable *897 expectation of procuring another prospect who would have been ready, able, and willing to purchase the property for the price of $213,000 fixed by the broker. The total absence of some such allegation, or allegations, from the declaration is sufficient to render the declaration bad on demurrer, even though it be assumed, for the sake of argument, that with such allegations present a case would have been stated to warrant recovery against the purchaser."
The complaint filed in the case sub judice supplies the allegations of fact omitted from the declaration in the Williams case which rendered that declaration fatally defective. Here the complaint alleges "that had not the conspiracy instigated and carried to a conclusion by defendant been effective, defendant would have purchased the Welton Smith property through plaintiff as broker for the listed price of $27,400.00, out of which plaintiff would have been paid the agreed commission in accordance with his contract with the owner."
A later decision by the Supreme Court which sheds light on the problem here considered is that of Borinsky v. Cohen.[6] In that case a real estate broker filed a complaint in equity against the purchaser seeking recovery of damages resulting from the purchaser's tortious interference with the contractual right between the broker and the seller. In holding the complaint insufficient to allege a cause of action, the Court said:
"It is generally alleged that the purchasers wrongfully and fraudulently informed the seller that the broker had nothing to do with the transaction and by such alleged fraud succeeded in purchasing the property for some unstated purchase price less the usual and customary real estate commission that otherwise would have been paid to the broker for the service that he allegedly rendered. As we understand this count, respondent attempts to allege in substance that the purchasers had unjustly enriched themselves at the expense of the broker to the extent of the reduction in purchase price by fraudulently representing that the broker was not instrumental in bringing about the transaction. As so construed, the second `count' might conceivably be strengthened by allegations adequate to support a cause of action at law. However, as set forth in this complaint the so-called `second cause of action' is fatally insufficient. See Ringler v. Ruby, 117 Or. 455, 244 P. 509, 46 A.L.R. 245; Allen v. Ramsey, 170 Okla. 430, 41 P.2d 658, 97 A.L.R. 1259; Keviczky v. Lorber, 290 N.Y. 297, 49 N.E.2d 146, 146 A.L.R. 1410; including Annotations to all three cases in A.L.R."
We have reviewed the three decisions cited by the Supreme Court in the abovequoted portion of its decision in Borinsky, and note that the case of Ringler v. Ruby[7] is more analogous to the case at bar than either of the other two cases cited.
In Ringler, the plaintiff real estate broker sued the purchaser for damages resulting from the latter's unlawful interference with the broker's listing contract with the seller. The material allegations in the Ringler complaint are identical in all material respects with the allegations contained in appellant's complaint with only one exception which we consider immaterial. In Ringler, it is alleged that the defendant purchaser affirmatively represented to the owner that he, the purchaser, had not consulted any broker regarding the property in issue, and that if the property was sold directly to defendant, no brokerage commission would be payable. In the case sub judice, it is alleged that defendant purchaser, acting through his undisclosed agent, remained silent as to his prior negotiations with plaintiff, *898 and failed to disclose to the seller that plaintiff was the procuring cause of the sale which the owner was importuned to make directly to defendant. The complaint in Ringler was held to be sufficient to state a cause of action even though the plaintiff was precluded from recovering for failure to prove by competent evidence the essential allegations of his complaint.
We agree with appellant that the distinction between the allegations of his complaint and that filed in Ringler is immaterial. In the complaint herein reviewed, it is alleged appellee knew if the owner Smith had been informed of appellee's negotiations with appellant concerning a sale of the property, Smith would not have sold for the price of $26,000.00, but would have required payment of the full listed price of $27,400.00, which price appellee was ready, willing, and able to pay, and would have paid if his fraudulent scheme had not been successful. These allegations are sufficient to impose upon appellee a duty to make full disclosure to Smith of appellant's participation in the transaction and the services he had rendered in interesting appellee in the purchase of the property. This the appellee failed to do. "It is fundamental that a suppression of truth may constitute fraud as much as a false suggestion, provided that it is material to the transaction. A distinction must be drawn, however, between passive and active concealment. The former involves mere silence or failure to disclose a fact, while the latter involves a purpose or design. It is only when there is a duty to reveal the fact that mere nondisclosure constitutes fraud."[8] The conclusion we have reached finds support in decisions from other jurisdictions.[9]
It is our view, and we so hold, that the amended complaint filed by appellant sufficiently states a cause of action to withstand assault by the motion to dismiss. The judgment of dismissal is accordingly reversed and the cause remanded for further proceedings.
Reversed.
STURGIS, Chief Judge, and RAWLS, J., concur.
NOTES
[1] Jackson Tom, Inc., et al. v. Carlton et al., (Fla.App. 1961) 133 So.2d 752; 25 Fla.Jur., Pleadings, § 127, p. 283.
[2] Dade Enterprises, Inc., v. Wometco Theatres, Inc., 119 Fla. 70, 160 So. 209.
[3] Chipley v. Atkinson, 23 Fla. 206, 1 So. 934.
[4] Johnson v. Gustafson et al., (1938) 201 Minn. 629, 277 N.W. 252.
[5] Williams v. Dr. P. Phillips & Sons, Inc., (1918) 160 Fla. 110, 33 So.2d 637.
[6] Borinsky et al. v. Cohen, (Fla. 1956) 86 So.2d 814.
[7] Ringler v. Ruby, (1926), 117 Or. 455, 244 P. 509, 46 A.L.R. 245.
[8] 14 Fla.Jur., Fraud and Deceit, § 27, pp. 555-556.
[9] Equi et al. v. Frankel, Sup., 156 N.Y.S.2d 430; Johnson v. Gustafson et al., (1938), 201 Minn. 629, 277 N.W. 252.