290 So.2d 612 (1974)
STANDARD FRUIT & STEAMSHIP COMPANY et al.
v.
Donald S. PUTNAM.
No. 47405.
Supreme Court of Mississippi.
February 18, 1974.
*613 Watkins & Eager, William F. Goodman, Jr., Jackson, Martin & Taylor, Gulfport, for appellants.
Daniel, Coker, Horton, Bell & Dukes, Donald V. Burch, Jackson, for appellee.
BROOM, Justice:
In the Circuit Court of Hinds County, Mississippi, appellee, Donald Putnam, was awarded a verdict in the sum of $22,500 based on a suit for tortious, wrongful and malicious interference with his employment, trade or calling. We reverse and render.
Putnam, a truck driver, of very little formal education, experienced several accidental injuries related to different episodes. An injury (the date of which is not clear) to his foot and ankle resulted in his wearing a leg brace and walking with a limp. In February 1969 he suffered neck and shoulder injuries in a truck mishap. In October 1969 Putnam suffered chest pains after making "six turnaround trips" by himself as truck driver and was hospitalized. On December 3, 1969 Putnam was injured while employed as a truck driver for A. Joseph & Sons (Joseph), whose principal business as a contract carrier was hauling bananas from the state owned port at Gulfport, Mississippi to other points. This accidental injury occurred within the banana terminal which was part of the facilities of the state owned port.
For his injuries related to the December 3, 1969 accident, Putnam sued Seland and Thomas P. Toomey, Seland's vice-president and manager, and was awarded a $25,000 jury verdict. At the trial his previous accidents, injuries and disabilities were revealed in testimony heard by Toomey. During that trial Toomey listened as Putnam's doctor stated that Putnam might never be able to resume work as a truck driver  if ever, it would be a "couple of years." Putnam's injury of December 3, 1969 required surgery and he did not work but a limited amount in the year 1970. He was able to work some in 1971 and then in February 1972 resumed his employment as a banana truck driver for Joseph.
On February 8, 1972 Putnam drove a banana truck from Jackson to Gulfport, arriving there in the night time. Lettering on its doors identified the truck as Joseph's. The case at bar is based upon events that transpired on the morning of February 9, 1972 in the banana terminal. After following the line of traffic through the gates of the terminal where the truck was weighed, Putnam backed the truck into proper position, exited the truck and walked to the front of it.
*614 Toomey (one of appellants) was in the area and, recognizing Putnam, asked what he was doing. Putnam replied that he had gone back to work and, in response to another question by Toomey, said he was again driving for Joseph. Toomey was quite upset and remarked, "I bought and paid for your ass one time and I'm not going to do it anymore." "I paid you for total and permanent disability." Toomey then assembled all the foremen, pointed out Putnam and gave instructions that Putnam was not to be permitted back in the terminal.
The incident in question (excluding Putnam on February 9, 1972) happened in the banana terminal wherein Putnam had previously been injured on December 3, 1969. For that injury he had sued Toomey and Sealand and recovered the $25,000 verdict. At all pertinent times, the terminal and all of the equipment therein, was by the state let to (and in effect under lease to) appellant, Standard Fruit & Steamship Company (Standard). An existing contract between Standard and Sealand provided that Sealand was to perform all loading and discharging of all cargo on vessels owned or operated by Standard. This contractual agreement further provided that Sealand was to hold Standard harmless for any property damage or personal injury claim made against Standard as lessee of the terminal arising out of the operations of Sealand.
Significant is the fact that the terminal from which Toomey excluded Putnam was a highly congested area permeated with danger and hazards. Four gantry cranes, several conveyor fingers, refrigerated trailer type trucks, vehicles, machines, and related equipment were used there. Over three hundred employees, plus truck drivers and other personnel populated the terminal. The personnel and items mentioned above were compacted within the terminal which was fenced, and measured approximately six hundred feet east to west, and five hundred feet south to north.
As Sealand's manager in charge, Toomey had complete control and authority of the terminal. Appellants were vested with the authority to admit or not admit people to the premises where the exclusion of Putnam occurred. Damages sought are based upon the refusal of Toomey to permit Putnam to drive within or otherwise work upon the premises. Whether or not there was any actual malice between Toomey and Putnam is disputed. The main issue is whether or not appellants had an absolute privilege to exclude Putnam and thereby avoid liability.
At least two types of absolute privileges exist in our jurisprudence. These privileges extend to (1) rights incident to the ownership of property interests, and (2) rights to enter or refuse to enter into contractual relationships. Certain other privileges are qualified privileges such as the right to engage in lawful and reasonable competition with other businesses.
Briefs before us do not cite any applicable authority contradicting the proposition that Toomey was clothed and vested with rights and privileges incident to property rights vested in appellants as tenants (lessees) of the banana terminal area. Included among these rights and privileges was the right to exclude Putnam upon the facts shown by the record. Our decision here does not involve a licensee in the posture of a public utility where the public may have rights as granted and delineated by statute. While Putnam as driver was excluded, Joseph's truck itself was not denied access to or from the premises. Another Joseph driver was allowed to operate the truck. Not before us is any question as to any possible cause of action of Joseph who is not a party litigant. Appellants here are two private corporations and an individual conducting business upon property let to them by the State under Mississippi Code Annotated section 59-5-1 to 59-5-69 (1972) [formerly Mississippi Code 1942 Annotated section 7564-01 et seq. (Supp. 1972)].
*615 Although appellants were not the fee simple owners of the premises in question, they were tenants vested with leasehold rights to the premises. They were clothed with the same power of control and possessory rights as if they were the owner. 51C C.J.S. Landlord & Tenant § 308 at 781-782 (1968). A lease in law is a conveyance or transfer of leased property and no right of possession or use remains in the lessor except those reserved by suitable language. Collins v. Wheeless, 171 Miss. 263, 157 So. 82 (1934); Crowell v. New Orleans & N.E.R.R., 61 Miss. 631 (1884).
The general law of landlord and tenant in Mississippi gives a leasehold tenant the right to exclude entry to one whom he considers unsatisfactory, or detrimental to his business, or a hazard. Putnam's assertion of improper motive or malice in excluding him is unavailing. Though the factual context was quite different, we cite the following appropriate language from the early case of Wesley v. Native Lumber Company, 97 Miss. 814, 53 So. 346 (1910):
It is true that a person has the right to refuse to have business relations with any person whomsoever, whether his refusal is the result of caprice or malice, without laying himself liable to action therefor... . (97 Miss. at 820, 53 So. at 347).
To the same effect is 45 Am.Jur.2d Interference section 23 at 298 (1969).
Appellants in the case at bar had a legal right to exclude Putnam from the premises even though Toomey's or their motive might not have been compassionate as to him. 2 Cooley on Torts section 224 (4th ed. 1932). The words uttered by Toomey when he excluded Putnam were not actionable though lacking in congeniality. No liability attaches to a lawful act where as an incidental result thereof another person may lose his job as under the facts and circumstances of this case. Restatement of Torts § 762 (1939).
Liability for "incidental interference" with employment relations is briefly discussed by W. Prosser, Handbook Of The Law Of Torts, section 129 at 941-42 (4th ed. 1971), wherein it is said: "There appears to be no discoverable harmony or agreement on these decisions." This authority recognizes the importance of "the defendant's privilege," and that "incidental character" of injury to a plaintiff is one factor to be considered. In our system of free enterprise, to rule that Toomey and the other appellants here are liable for the incidental loss of Putnam's job with Joseph would be to impose illogical, improper, undesirable, and untenable restrictions upon the leasehold property rights vested in appellants. What Toomey did in excluding Putnam from the premises was obviously not any affirmative "procurement" of the breach of any contract Putnam had with any other party. Neither was the action of Toomey such an "invasion" of nor "substantially interfering" with Putnam's contractual or employment rights to justify invoking the rationale of Johnson v. Gustafson, 201 Minn. 629, 277 N.W. 252 (1938) in this jurisdiction. Here, Putnam did not make any further request to be allowed admittance, and made no request for any opportunity to establish that he had fully recovered from injuries that he previously charged in the earlier trial were "permanent" injuries.
Memphis Steam Laundry-Cleaners, Inc. v. Lindsey, 192 Miss. 224, 5 So.2d 227 (1941) is not controlling because of the obvious factual distinctions. There the action filed by plaintiff Lindsey was directed at unfair competition wherein he charged defendant with acts committed "for the express purpose of destroying the appellee's established business." Other cases cited by appellee do not reach the question here which is decisive  that is, whether one who has full possessory rights in property may exclude another, where there is not involved any aspect of limited possessory rights such as in a public utility, or where no conspiracy exists, or where the exclusion *616 is not done to interfere with the right to compete, or to further racial discrimination.
After Putnam was dismissed from his job with Joseph he then applied for work and was hired as a dispatcher with another firm, Highway Express, in the Jackson, Mississippi area. It is noteworthy that in discussing his application for employment with Highway Express he stated he was still unable to do any heavy labor. In excluding Putnam from the area Toomey was exercising his judgment (to exclude Putnam from a compact, congested and dangerous area) based upon testimony which he heard at the previous trial revealing that Putnam had experienced several prior disabling accidents. At the time he excluded Putnam, Toomey had knowledge of the testimony of the doctor given in the first trial to the effect that Putnam would not be able to drive a truck again in less than two years, and possibly never. He had knowledge of Putnam's allegation in his previous declaration that he was permanently disabled. Under the contract of Toomey's company (Sealand) with Standard, Sealand was to assume any liability that might accrue in favor of some third party as against Standard for property damage or personal injury incurred on the premises. These facts required and fully justified Toomey in being selective as to whom he would allow to enter or work in these premises. Neither one of appellants, upon the facts and circumstances of this case, was liable for excluding Putnam, even though the incidental and regrettable result thereof may have been the loss of Putnam's job as a truck driver for Joseph.
Even if we were to hold that the privilege of appellants to exclude Putnam was not absolute in character (and we do not so hold), Putnam could not recover damages from any one of the appellants upon this record. Toomey, having knowledge of Putnam's history of accidents and resulting injuries as detailed in this opinion, acted reasonably within his qualified (if not absolute) privilege to exclude Putnam from the compact area which contained such an intense concentration of vehicles, complicated equipment, moving traffic, and over three hundred employees.
Reversed and rendered.
GILLESPIE, C.J., and SMITH, ROBERTSON and WALKER, JJ., concur.