## CLARA S. TWITCHELL v. GLENWOOD-INGLEWOOD COMPANY AND ANOTHER.[1]

December 17, 1915.

Nos. 19,452—(112).

**Action — joint and several liability.**

　1. Where a single injury is suffered in consequence of the wrongful acts of several persons, all who contribute directly to cause the injury, though there was no conspiracy or joint concert of action between them, are jointly or severally liable.

**Contract — interference by third person.**

　2. Actual or implied malice is an essential element to the right of action for the wrongful interference by a third person with the contract relations between others.

[1]Reported in 155 N. W. 621.

————————————————————————————————

Note.—As to liability of a person in damages for inducing a third party to break his contract, see notes in 21 L.R.A. 233; 16 L.R.A.(N.S.) 746; and 28 L.R.A.(N.S.) 615.

**Same — presumption.**

3. When the person so interfering in such relations, causing a breach of the contract, has knowledge of facts which, if pursued by reasonable inquiry, will disclose such relations, and the rights of the parties in respect thereto, and he fails to make the inquiry, the law will presume knowledge thereof precisely as though he made the inquiry and impute to him bad faith.

**Same — actual malice.**

4. In such case a showing of actual notice is unnecessary.

**Damages.**

5. In an action for the wrongful interference with a contract extending over the period of ten years, in the form of a lease of property, plaintiff is entitled to recover all damages suffered, both present and prospective, in one action, for successive actions cannot be maintained.

**Exclusion of evidence.**

6. Evidence tending to show a temporary impairment of the business covered by the contract wrongfully interfered with, existing at the time of the wrongful interference, *held* properly excluded.

**Measure of damages.**

7. The instructions of the trial court correctly gave to the jury the proper rule of damages.

**No error.**

8. The record presents no reversible error.

Action in the district court for Hennepin county against Leonard Nelson, James F. Cummings and the Glenwood-Inglewood Company to recover $25,000. The case was tried before Fish, J., who when plaintiff rested denied the motions of defendants to dismiss the action, and a jury which returned a verdict for $3,000. Separate motions of the defendants for judgment notwithstanding the verdict or for a new trial were denied. From the order denying the motions, defendant Cummings and defendant company appealed. Affirmed.

*McDowell & Fosseen* and *A. E. Helmick,* for appellants.

*Selover, Schultz & Selover,* for respondent.

BROWN, C. J.

The facts in this case are substantially as follows: Plaintiff had established a business of selling and delivering to patrons spring water taken from a well located upon land owned by her and the same had been

conducted for several years. The business was not large, but well established and fairly remunerative. In October, 1910, she transferred the business, and sold certain personal property used in conducting the same, namely, horses, wagons and facilities for carting and delivering water to customers, to Anderson and Nelson. The consideration of the sale and transfer was a lease executed by Anderson and Nelson, under and by which they contracted and agreed to conduct and carry on the water business as theretofore carried on by plaintiff, for and during a period of ten years; to deliver such water to the trade as theretofore established; to use their best efforts to increase and enlarge the same, and to pay to plaintiff the sum of $100 per month as rent. To secure the performance of the terms of the lease, as well as the payment of the purchase price of the personal property, Anderson and Nelson executed to plaintiff a certain chattel mortgage covering said property, conditioned for the payment of the agreed price thereof, "according to the conditions of a written instrument or agreement for leasing, a copy of which is made a part" thereof, and in all and every respect to comply with the conditions of said lease. A subsequent chattel mortgage executed by Anderson and Nelson, on August 1, 1911, made some changes in the payments of rent, but the purpose of the original mortgage was continued; that purpose being to secure the payment of the rent provided for, and to obligate the mortgagors to keep and perform the terms and provisions of the leasing agreement. The lease contained a provision to the effect that the lessees should not assign the same, or sublet the premises, or dispose of the business without first obtaining the written consent of plaintiff, and that they, the lessees, should keep and maintain the premises in good sanitary condition.

The lessees entered into possession of the property and continued thereafter to conduct the business so transferred to them. In January, 1912, defendant Cummings, who had a lease from plaintiff under which he was authorized to take and remove sand from the land adjacent to the well, set up a claim that his lease included the well, but his claim was unfounded and without merit. Twitchell v. Cummings, 123 Minn. 270; 143 N. W. 785. Cummings was particularly aggressive in the assertion of his claim. He purchased the interest of Anderson, but sold out to one Nimmerfroh ten days later. Some time in February, 1912, he offered to sell the business to defendant Glenwood-Inglewood Company,

a corporation engaged in the same territory in the same line of business. The company declined to buy at the time, but on July 2, 1912, did purchase the business from Nelson and Nimmerfroh, and a complete sale and transfer of the property and the business was then made to it, Nelson, at the same time and as a part of the transaction, entering into the employ of the company as a salesman. He continued thereafter, as the agent of the company, to sell and deliver water to his former customers, and those secured by plaintiff when she had charge of the business. He informed such customers of the change in proprietorship, and solicited them to continue to take water from the new company, and he was generally successful. With this transfer to the Inglewood company the business leased to Anderson and Nelson was abandoned, and the contract evidenced by the lease and chattel mortgage broken and violated, though the well from which water was taken was not transferred to that company. Plaintiff brought this action against the three defendants, on the theory and claim that their acts and conduct in procuring and bringing about the violation of the contract by Anderson and Nelson were wrongful and unlawful, vesting in plaintiff a cause of action for the wrong. Plaintiff had a verdict, and defendants Cummings and Glenwood-Inglewood Company appealed from orders denying their separate motions for judgment or a new trial.

While appellants moved separately for a new trial, and present separate assignments of error and independent argument in support thereof, the leading questions raised are common to both, and will be considered together. It is urged that the evidence wholly fails to show a conspiracy or joint concert of action on the part of defendants to cause Anderson and Nelson to break the contract with plaintiff, and for this failure of proof that the court erred in denying a motion to dismiss the action, and also erred in instructing the jury that the record of the chattel mortgage and lease was sufficient notice to appellants of plaintiff's rights; sufficient to charge them with wrongful interference with plaintiff's contract relations, and in charging that actual notice was not necessary.

The cause was before the court on a former appeal (126 Minn. 423, 148 N. W. 451, 601), where it was held, following the authorities there cited, that a wrongful interference with the contract relations of others, causing a breach thereof, is an actionable tort; and, further, that the evi-

dence then before the court was sufficient to justify a finding that Cummings and Glenwood-Inglewood Company, acting in concert, and with knowledge of plaintiff's contract rights wrongfully interfered and caused a breach of the contract by Nelson. We follow and apply that decision and come directly to the questions presented on this appeal.

The action sounds in tort, and the first question above stated involves the inquiry whether, to entitle plaintiff to recover, it was incumbent upon her to show a conspiracy or joint concert of action by defendants. This question was not considered or decided on the former appeal, but it is now urged as one of the principal issues in the case. We may remark in passing that, if such joint concert of action is essential to plaintiff's right of recovery, the evidence presented in the record is not conclusive thereon, and the issue should have been submitted to the jury. We hold, however, that the question whether joint concert of action is necessary should be answered adversely to defendants' contention. If the acts and things done by the defendants, though they were acting independently of each other, were wrongful and an unlawful interference with the relations between plaintiff and her lessee, and concurred in bringing about the specific injury complained of, namely, the breach of the contract and destruction of the plaintiff's water business, they are jointly and severally liable, though there was no conspiracy or joint concert of action between them. It was held in Virtue v. Creamery Package Mnfg. Co. 123 Minn. 17, 40, 142 N. W. 930, 1136, L.R.A. 1915B, 1179, 1195, Mr. Justice Hallam speaking for the court, that all tort feasors are jointly or severally liable "even though they act independently and without concert of action, * * * provided their several acts concur in tending to produce one resulting event." Such was the effect and result of the acts committed by both appellants in the case at bar; the acts of each tended to and did in fact bring about the breach of plaintiff's contract, and the evidence brings the case within the rule applied in the Virtue case. The court was therefore right in its instructions. In addition to the authorities cited in that case, see Allison v. Hobbs, 96 Me. 26, 51 Atl. 245, and those cited in 15 Enc. Pl. & Pr. 558. The rule is illustrated by the case of McClellan v. St. Paul, M. & M. Ry. Co. 58 Minn. 104, 59 N. W. 978, and by numerous citations in 38 Cyc. 488, 489. Though some of the authorities distinguish between torts arising from negligence, and those

originating in wilful acts (note to William Tackaberry Co. v. Sioux City Service Co., 40 L.R.A. [N.S.] 102), the rule applied in the Virtue case must be deemed the settled law in this state. See also G. S. 1913, § 7780. Sloggy v. Dilworth, 38 Minn. 179, 36 N. W. 451, 8 Am. St. 656, and Nohre v. Wright, 98 Minn. 477, 108 N. W. 865, 8 Ann. Cas. 1071, are not in point. In disposing of the question we have not considered the further question whether defendants did not waive the objection by failing to present it by their answer. G. S. 1913, § 7755; Campbell v. Railway T. Co. 95 Minn. 375, 104 N. W. 547.

2. The chattel mortgage given to plaintiff by Anderson and Nelson, her lessees, was to secure the performance of the terms and conditions of the lease, and the lease was attached to and expressly made a part of the mortgage contract. The mortgage with lease attached was properly filed for record, and was constructive notice to all persons of the terms and provisions of the mortgage. The court instructed the jury that such filing also constituted notice of the terms and provisions of the lease because, by the language of the mortgage, the lease was expressly made a part thereof. The court further instructed the jury that this constructive notice was sufficient to charge defendants with liability, to the same extent as though they had actual notice of the lease. The court also instructed the jury that, on the undisputed evidence, the interference by defendants with plaintiff's contract with Nelson and the breaking thereof by him was clear, and that defendants were liable in the action, even though there was no conspiracy or joint concert of action between them. The court therefore submitted to the jury the question of damages only. In reaching this conclusion the trial court in his charge discussed generally the legal rights and liabilities in such cases.

The learned judge may have been wrong in some of his conclusions, particularly in the conclusion that constructive notice of the contract was sufficient to charge defendants with liability in tort. A request was presented for an instruction that defendants could not be held liable, unless it was found that they had actual notice of the mortgage and lease, and this was refused. But whether the court was right or wrong in its theory of the law, if it was right in the general conclusion that, on the facts disclosed, defendants are liable, the particular reason assigned as a basis for that conclusion would not be material. It may be conceded that

actual notice is necessary in cases of this kind, and that, without it, defendants could not be charged with tort liability. To justify recovery for the wrongful interference with existing contractual relations malice, either express or such as the law may imply from the facts disclosed, must be shown. 38 Cyc. 511; Joyce v. Great Northern Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A.(N.S.) 756; Ensor v. Bolgiano, 67 Md. 190, 9 Atl. 529. It is not necessary to show actual malice, though the case is of course stronger where it affirmatively appears. All that need be shown is knowledge on the part of the alleged wrongdoer of the contract with which he interferes, and from this the law will presume bad faith. Salmond, Torts, 501. There can be no express malice where the contractual relation is unknown to the alleged wrongdoer, and it is a little difficult to imply it as a matter of legal inference when known only constructively and from the fact that it is a matter of record. But we are clear in the case at bar that the evidence is practically conclusive that both defendants had actual notice of the relations existing between plaintiff and Nelson, at least notice of facts which if followed by inquiry would have led to a complete disclosure of those relations. Defendant Cummings was particularly active in the matter. He knew of the ownership of the land on which the well was located, and that Anderson and Nelson were operating the water business under contract with plaintiff. He gave them notice in writing to refrain from paying further rent to plaintiff, on the ground that he had the exclusive right to the use of the well under his sand lease. It is idle for him to say that he was prejudiced by the action of the court in charging him with liability on the theory of constructive notice, for he had actual notice of the relations existing between Anderson and Nelson and plaintiff. He bought Anderson's interest, thereby causing him to break his contract, and joined with Nelson in running the business for ten days, and then sold to Nimmerfroh. If it may be said that the Inglewood company did not in fact know of the terms and provisions of the lease, the evidence is conclusive that the officers of the company did know of facts sufficient to put them upon inquiry, which, had the inquiry been made, would have laid bare the true situation. However, it would be a strain to presume that they entered into the transaction wholly ignorant of the relations between plaintiff and Nelson. Cummings suggested to the officers of the company that

they buy out Anderson and Nelson, and informed them of the existence of a controversy concerning the rights of the plaintiff. The company referred the matter to an attorney and was advised by him to keep out; that if they entered into the matter a lawsuit might result. In addition to this the officers of the company knew that Nelson was operating under some agreement with plaintiff. The business was in competition with that conducted by the company, and its interests would be advanced by the suspension of plaintiff's business. The company bought out Nelson, took over all the property and equipment delivered to him by plaintiff, and in addition took over Nelson also and set him to work in an effort to acquire all of plaintiff's established customers. Before doing this, the officers of the company did no more than to cause the records to be searched for the chattel mortgage. They knew that plaintiff owned the well, and knew also that a controversy existed as to whether she or Cummings was entitled to the rent paid by Nelson, yet no inquiry was made of plaintiff concerning her rights. This situation brings clearly into application the rule that knowledge of facts relating to a matter which would naturally lead an honest and prudent person to make inquiry concerning the rights of others, constitutes notice of everything which such inquiry, pursued in good faith, would disclose. 2 Dunnell, Minn. Dig. § 7231; Bartleson v. Vanderhoff, 96 Minn. 184, 104 N. W. 820. It is no answer in such case that the records were examined with the result that no adverse rights were there found. Shotwell v. Harrison, 30 Mich. 179. Though some of the courts treat this as constructive notice, by the general trend of authority it is classed as actual notice of all facts that proper and reasonable inquiry would have brought to light. From a knowledge of such facts the law imposes the duty to inquire, and the failure to do so, either wilfully or negligently, constitutes bad faith and the legal inference of actual knowledge is conclusive. 21 Am. & Eng. Enc. (2d. ed.) 1, 590; Cambridge Valley Bank v. Delano, 48 N. Y. 326; Baker v. Bliss, 39 N. Y. 70; Wade, Notice, § 17.

It follows therefore that the trial court was right in its instructions, though perhaps in error in one of the reasons given therefor, and we pass to a consideration of the assignments challenging certain rulings on the admission and exclusion of evidence, and in the instructions of the court upon the question of damages.

3. Defendants offered evidence for the purpose of showing that plaintiff's well was improperly located and permitted surface water to drain into the well and contaminate the water, thus rendering it unfit for use, in consequence of which the business was worthless, and no injury was suffered by plaintiff from the act of defendants in causing her lessee to break and abandon the contract. The court excluded the evidence, and of the ruling defendants complain. Defendants are in no position to complain of the ruling. The lessees were under contract with plaintiff to keep and maintain the well in suitable condition for use. It is undisputed that the business had been conducted for several years, and was so conducted up to the day of the sale to the Inglewood Company. The lessee Nelson, on and prior to that date, was supplying about 200 customers with water from the well, and these he turned over to that company. The business had been fairly profitable up to the date of the sale, at least could have been made profitable with proper care and attention. There is no suggestion in the record that the condition relied upon as showing that the well had become valueless could not readily be removed. And since the injury to plaintiff by the acts of defendants in causing the lessee to break and abandon the contract, was the resulting destruction of the business, and the transfer of her customers to the Inglewood Company, we think the court was fully justified in excluding the evidence mentioned, for it did not tend to show a permanent impairment of the well. If the business had been prosperous, plaintiff had the right to proceed on the theory that it would continue prosperous if properly managed. Defendants, being wrongdoers, are in no position to assert that the lessee would perhaps not have been able to perform the contract. As remarked by Mr. Justice Brewer, in Angle v. Chicago, St. P., M. & O. Ry. Co. 151 U. S. 1, 14 Sup. Ct. 240, 38 L. ed. 55: "It certainly does not lie in the mouth of a wrongdoer, in the face of such probabilities as attend this case, to say that perhaps the contract would not have been completed even if no interference had been had, and that, therefore, there being no certainty of the loss, there is no liability."

If there had been a total destruction of the well, and an abandonment of the business, prior to the date of the sale and transfer to the Inglewood Company, a different question would perhaps be presented. But the well had not been destroyed, nor the business abandoned, for Nelson

testified that he continued the same up to and including the day of the sale to the Inglewood Company. The evidence offered tended only to show conditions temporarily affecting the quality of water taken from the well. For this reason much of the evidence offered by defendants for the same general purpose, and showing the cost and expense of operating the business, was properly rejected. Plaintiff proved beyond dispute an established business, and, though the profits therefrom were not large, and the income may have varied from time to time, or the property become out of repair, proof thereof would in no way tend to exonerate defendants from their wrongful conduct, or lessen the injury occasioned by the destruction of the business, at their hands. We discover no error upon this branch of the case of which defendants may complain, and this statement includes various assignments of error not necessary separately to mention, including the alleged error in the refusal of defendants' application to amend their answers.

5. Defendant Inglewood Company requested the court to instruct the jury that, if they found from the evidence that immediately upon learning that plaintiff claimed an unlawful interference with her rights the company offered to return the personal property received from her lessee Nelson, and consented that she might resume the sale and delivery of water to the customers turned over to the company by Nelson, and theretofore served by her, then and in that case plaintiff could recover no damages thereafter suffered in consequence of the act of defendant in purchasing the business from Nelson. This request was presented orally in another form at the trial, and upon the additional theory that it was the duty of plaintiff to take advantage of this offer by defendant, and thus minimize the damage resulting from defendants' conduct We think these requests were both properly refused. By defendants' wrongful conduct the contract with her lessee was wholly destroyed. The injury to her was the loss of that contract. She was not required to reengage in the water business for the benefit of defendant, and her failure to do so cannot inure to its benefit. While this defendant offered to return the personal property, and the route of customers, there was no offer to put plaintiff in *statu quo,* by a restoration of her contract rights. Defendant had employed her lessee, caused him to break the contract, and

defendant was without power to require him to return to and continue the performance of the contract with plaintiff.

6. It is contended that the damages are excessive, and that the court erred in some of its instructions upon the question. In this we do not concur. The damage to the business, present and prospective, was adopted by the trial court as the correct rule, and no request for the submission of any other rule was made by either party. In fact the rule applied would seem the one suggested in our former opinion. We think the instructions were correct. Plaintiff, immediately upon the interruption and breaking up of her contract with Nelson, became vested with the right to recover such damages, present and prospective, as she suffered in consequence of defendants' wrongful conduct. Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332; 1 Sutherland, Damages, § 131. The lease and contract broken, extended for a period of ten years, with an agreed rental of $1,200 per year after the second year, and plaintiff's claim of damages was inseparable, and recoverable in one action; in such cases successive actions cannot be maintained. The court instructed the jury that "you are to take into consideration not only the present value of that business as it would have been if it had been turned back to the plaintiff at the time it was diverted, but its value as a prospective enterprise or business. It is not merely its value at that moment, but what, in a reasonable view of the matter, would it have been worth if it had been turned back to [plaintiff] so that she could have gone on with the business and made out of it what it was possible to be made." This instruction was given in response to a special request by the jury for further directions and left no doubt or uncertainty as to the date from which the damage should be computed. It is probable that *prima facie* at least plaintiff's damage was the amount of rent agreed to be paid under the lease. Kalkhoff v. Nelson, supra. But the court did not so instruct, on the contrary directed the jury to ascertain from all the evidence what in their judgment plaintiff actually suffered, based upon the value of the business when interrupted. The time in the future, to be considered by the jury, was limited by other instructions to the period covered by the lease. The amount awarded, though large, having received the approval of the trial court, cannot well be declared beyond that authorized by the

131 M.—25.

facts disclosed. The amount includes actual damages only. No exemplary damages were claimed.

7. This covers the main features of the case. All assignments of error, not included within what has been said, have been considered, with the result that no reversible error appears. It is not necessary to refer specially to all of them. It is sufficient to say that they have been fully considered.

Order affirmed.