192 So.2d 24 (1966)
Myron RETZKY, Appellant,
v.
J.A. CANTOR ASSOCIATES, INC., a Florida Corporation, Appellee.
No. 66-139.
District Court of Appeal of Florida. Third District.
November 8, 1966.
Rehearing Denied December 5, 1966.
*25 Pallot, Silver, Pallot & Stern, Horton & Schwartz, Miami, for appellant.
Bolles, Goodwin & Ryskamp, Miami, Sponder & Bloom, North Miami, for appellee.
Before HENDRY, C.J., and PEARSON and SWANN, JJ.
HENDRY, Chief Judge.
This is an appeal by the defendant from a final judgment following a jury verdict for the plaintiff in an action for damages in the amount of $27,500.00.
The plaintiff, a registered real estate broker, alleged in its complaint that it was given a listing on the Shoreham-Norman Hotel and that it showed the property to the defendant and initiated negotiations which lead to the purchase of the hotel by a corporation formed and controlled by the defendant for that purpose. It was also alleged that the defendant by his wilful and malicious actions in dealing directly with the sellers of the hotel deprived plaintiff of its opportunity to earn a commission and tortiously interfered with the contractual relationship existing between the plaintiff and the sellers. Further that had the defendant not so interfered the plaintiff could have and would have persuaded the defendant to purchase the hotel in accordance with the terms of the listing.
The defendant contends that the evidence is insufficient to support a verdict for the plaintiff, and that certain instructions to the jury were misleading and erroneous as a matter of law.
The evidence in this case was conflicting. In view of the jury verdict for the plaintiff, the facts will be discussed in a light most favorable to it. Samuel Brenner is a real estate salesman associated with the offices of plaintiff. Brenner became aware of the fact that the Shoreham-Norman Hotel was for sale by the owners, Messrs. Meyer, Leibling and Abess. The principal in the group was Baron de Hirsch Meyer who testified that he never gave a listing to any broker but generally made the information available when one of his properties was for sale. Brenner contacted the defendant in an attempt to interest him in the hotel and took him by the hotel for an inspection. Brenner quoted a price of $700,000.00 and was told by defendant to make an offer of $425,000.00. Brenner prepared a deposit receipt agreement on the *26 hotel and took it to the defendant. The defendant and Brenner went to the defendant's attorney to obtain his approval of the agreement. While at the attorney's office, the attorney called Meyer's office and found that he was in Europe.
Brenner left a call for Meyer which was returned on October 19, 1960. Brenner advised Meyer that he thought he had a deal on the Shoreham-Norman Hotel with the defendant. Meyer told Brenner that he would not consider an offer of $425,000.00 but that he would consider an offer of $650,000.00 now or $600,000.00 on the first of June since there was some security money involving the tenant in possession. Thereafter Brenner attempted to contact the defendant who was now in Europe. Brenner had received a postal card from the defendant in Europe inquiring about the status of the deal and asking to be contacted at the Hotel Dan in Tel Aviv, Israel. Brenner wrote to the defendant advising him of his conversation with Meyer but the letter was returned since the defendant had not stayed at the Hotel Dan. Brenner testified that upon the defendant's return, he remained in touch with defendant advising him to wait until the first of June to obtain the lower price  the last communication being in the middle of May, 1961. About June 1, 1961 Brenner read in the newspaper that defendant had purchased the Shoreham-Norman Hotel.
The defendant had formed a corporation to purchase and operate the hotel. The purchase price was $550,000.00. Meyer testified that this was a "net price" and that this was the reason he obtained an indemnification agreement from the defendant representing that there were no brokers involved in the sale and indemnifying him from any claim by a broker for a commission.
One who intentionally and without justification interferes with the advantageous business relationship existing between others which results in injury is liable in an action to recover the damages suffered.[1]
Initially, the broker had the burden of establishing an advantageous relationship with the seller. A broker can not recover for his services unless they were rendered at the express or implied request of his employer and a contract for services will not be implied unless the vendor knows or has reasonable grounds to believe that they were rendered with the expectation of receiving payment therefor.[2]
Mr. Meyer testified that he does not list his property with brokers but generally makes it known when one of his properties is for sale, and he expects the brokers to call him if they have a deal. Mr. Brenner testified that he made an appointment with Meyer on his return from Europe at which time he told him that he had a contract on the hotel from the defendant for $425,000.00. This offer was rejected but Meyer told him to tell his client that he could purchase it now for $650,000.00 or wait until the present tenant used up his security and purchased it for $600,000.00. From these circumstances, it would be reasonable to infer that the seller knew or had reason to believe that Brenner's services were being offered in expectation of payment of a reasonable commission.
Having established a business relationship with the seller, the plaintiff must show that the defendant wrongfully interfered with it with resulting injury.
The evidence reveals that Brenner was the person who first showed the property to the defendant and prepared a deposit receipt which was submitted to defendant's attorney. The defendant admitted these facts although at trial he could not remember whether or not a deposit receipt had been prepared by Brenner. There also is evidence that the defendant relied on Brenner *27 to keep him informed about the status of the hotel during his trip to Europe. Brenner testified that he continued to work on the deal after the defendant returned from his trip. However, approximately two weeks after his last conversation with the defendant he read in the newspaper that the hotel had been purchased by a corporation formed by the defendant. The sales price of $550,000.00 was below that quoted by Meyer to Brenner. Since Meyer considered this to be a "net price" he requested and obtained an indemnification agreement from the defendant representing that there were no brokers involved in the sale.
The foregoing evidence is sufficient to justify a finding that the defendant intentionally and without justification interfered with the plaintiff's business relationship. The injury which resulted is alleged to be the amount of a commission which the broker would have received but for the acts of the defendant.
The jury was instructed to determine whether plaintiff was the procuring cause of the sale. There is substantial evidence in support of their finding that the plaintiff was the procuring cause of the sale and that, therefore, the resulting injury of defendant's acts was in the amount of a reasonable commission.[3]
The defendant contends that it was error for the court to instruct the jury on the theory of procuring cause as the question of the liability of the seller is not in issue. In our discussion above we indicated the correctness of this charge. We have found no error in the instructions to the jury.
We have concluded that the evidence is sufficient to support the jury verdict for the plaintiff.
Accordingly, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] Franklin v. Brown, Fla.App. 1964, 159 So.2d 893.
[2] City Builders' Finance Co. v. Stahl, 90 Fla. 357, 106 So. 77 (1925).
[3] 30 Columbia Law Review 232 (1930).